**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MAX A. RADY,

Plaintiff,

v.

ANGLO AMERICAN US HOLDINGS INC., DE BEERS PLC, D/B/A DE BEERS GROUP, ANGLO AMERICAN PLC, DE BEERS JEWELLERS (US), INC., DE BEERS UK LIMITED, SIGNET JEWELERS, ORIGYN RESEARCH USA LLC, PAN INDUSTRIAL PLATFORMS LLC, AND PAN INDUSTRIAL SERVICES LLC,

Defendants.

C.A. No. 1:26-cv-00767-CFC

**DE BEERS/ANGLO DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I-VII AND TO TRANSFER ANY REMAINING CLAIMS TO THE SOUTHERN DISTRICT OF NEW YORK**

Dated: November 16, 2026

OF COUNSEL

Joshua D. Calabro
Christopher P. Borello
**VENABLE LLP**
151 W. 42nd Street, 49th Floor
New York, NY 10036
(212) 218-2371
JDCalabro@Venable.com
CBorello@Venable.com

Daniel A. O'Brien (No. 4897)
**VENABLE LLP**
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Tel: (302) 298-3535
daobrien@venable.com

*Counsel for Defendants Anglo American US Holdings Inc., De Beers plc, Anglo American plc, De Beers Jewellers (US), Inc., and De Beers UK Limited*

# TABLE OF CONTENTS


I. NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

II. SUMMARY OF ARGUMENT ........................................................................ 1

III.STATEMENT OF FACTS ............................................................................ 4

A.The prior New York action and the Federal Circuit decision......................... 4

B. The Asserted Patents and the shared specification ......................................... 5

C. The Texas dismissal, split refiling, and BCG action ...................................... 6

IV. ARGUMENT.................................................................................................. 7

A. Governing standards ........................................................................................ 7

1. Rule 12(b)(6), § 101, and collateral estoppel ............................................. 7

2. First-to-file and transfer ............................................................................... 8

B. Collateral estoppel bars Counts I-VII, and every claim is independently ineligible ........................................................................................................... 8

1.The prior judgment decided the same eligibility issue ............................... 8

2. The continuation limitations do not materially alter the issue and fail both *Alice* steps ...................................................................................................... 9

a. Signature generation and claims defined only by stored information ......... 9

b. Hardware, acquisition, and pre-solution activity...................................... 10

c. Physical-feature content, points, triplets, and relative distances ............... 11

d.Comparison, thresholding, virtual rotation, and classification.................. 13

e. Recording, saving, appending, and storing............................................... 15

f. Networks, replicated storage, remote receipt, querying, and display ........ 16

3. The ordered combinations and the Amended Complaint do not change the result.......................................................................................................... 17

C. The Court should transfer all remaining claims to the Southern District of New York ........ 18

1.The New York proceedings substantially overlap this action ........ 18

2. Rady first chose New York, and the forum-shopping exception warrants transfer ........ 19

3.The remaining claims could have been brought in New York ........ 20

V. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptive Streaming Inc. v. Netflix, Inc.*,
836 F. App'x 900 (Fed. Cir. 2020) .......... 13

*AI Visualize, Inc. v. Nuance Communications, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) .......... 7, 18

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
573 U.S. 208 (2014) .......... 2, 7, 9

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*,
402 U.S. 313 (1971) .......... 8

*Boston Consulting Group, Inc. v. Rady*,
No. 1:26-cv-08298 (S.D.N.Y.) .......... 6

*Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*,
406 U.S. 706 (1972) .......... 20

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) .......... 12, 16

*Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co.*,
63 F.3d 1227 (3d Cir. 1995) .......... 7

*Candid Care Co. v. SmileDirectClub, LLC*,
No. 20–1764-CFC, 2021 U.S. Dist. LEXIS 142393 (D. Del. July 30, 2021) .......... 8, 20

*Chavez v. Dole Food Co., Inc.*,
836 F.3d 205 (3d Cir. 2016) (en banc) .......... 8

*Communications Test Design, Inc. v. Contec, LLC*,
952 F.3d 1356 (Fed. Cir. 2020) .......... 8, 19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) .......... 5, 7, 15

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014) ....................................................................10

*EEOC v. University of Pennsylvania*,
850 F.2d 969 (3d Cir. 1988) ..........................................................................8

*Electric Power Group, LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ....................................................................14

*GoTV Streaming, LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. 2026) ...................................................................17

*Hawk Technology Systems, LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) .....................................................................13

*In re Killian*,
45 F.4th 1373 (Fed. Cir. 2022) .....................................................................12

*International Business Machines Corp. v. Zillow Group, Inc.*,50 F.4th
1371 (Fed. Cir. 2022)...................................................................................17

*Jumara v. State Farm Insurance Co.*,
55 F.3d 873 (3d Cir. 1995) ...........................................................................21

*Lenovo (United States) Inc. v. Universal Connectivity Techs. Inc.*,
No. 24–1126-RGA, 2025 U.S. Dist. LEXIS 188324 (D. Del. Sept.
24, 2025) ................................................................................................8, 19

*Ohio Willow Wood Co. v. Alps South, LLC*,
735 F.3d 1333 (Fed. Cir. 2013) ..................................................................7, 9

*Rady v. Boston Consulting Group, Inc.*,
No. 2022–2218, 2024 WL 1298742
(Fed. Cir. Mar. 27, 2024).................. 3, 4, 5, 9, 10, 12, 13, 14, 15, 16, 17, 18, 22

*Rady v. Boston Consulting Group, Inc.*,
No. 1:20-cv-02285 (S.D.N.Y.) ......................................................................4

*Rady v. Boston Consulting Group, Inc.*,
No. 4:25-cv-04031 (S.D. Tex.).......................................................................6

*Recentive Analytics, Inc. v. Fox Corp.*,
134 F.4th 1205 (Fed. Cir. 2025) ..............................................................11, 15

*SmileDirectClub, LLC v. Candid Care Co.*,
No. 6:20-cv-01115-ADA, 2021 U.S. Dist. LEXIS 260993
(W.D. Tex. Aug. 5, 2021) ....................................................................20

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ....................................................................17

*Universal Secure Registry LLC v. Apple Inc.*,
10 F.4th 1342 (Fed. Cir. 2021) ....................................................................5

**Statutes**

28 U.S.C. § 1391(c)(3)....................................................................20

28 U.S.C. § 1404(a) ....................................................................1, 21

35 U.S.C. § 101 ....................................................................1, 3, 4, 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................1, 7

Federal Rule of Civil Procedure 21 ....................................................................1, 21

**Other Authorities**

Min H. Kim et al., *3D Imaging Spectroscopy for Measuring Hyperspectral Patterns on Solid Objects*, ACM Trans. Graph. 31(4), Art. 38 (July 2012)....................................................................2, 3, 5, 10, 11

Matt Pharr, Wenzel Jakob & Greg Humphreys, *Physically Based Rendering: From Theory to Implementation* (3d ed. 2017) ....................................................................13

Defendants Anglo American US Holdings Inc., De Beers plc, Anglo American plc, De Beers Jewellers (US), Inc., and De Beers UK Limited (collectively, the "De Beers/Anglo Defendants") move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts I-VII with prejudice. They also move under the first-to-file rule, its forum-shopping exception, and 28 U.S.C. § 1404(a) to transfer Counts VIII-IX to the Southern District of New York. If the Court does not dismiss Counts I-VII, it should transfer the entire action or sever and transfer the claims against the De Beers/Anglo Defendants under Rule 21.

## I. NATURE AND STAGE OF THE PROCEEDINGS

This case is at the pleading stage. The Amended Complaint (D.I. 5) asserts seven patent-infringement counts involving U.S. Patent Nos. 12,375,261 (D.I. 5-1) ("the '261 patent"), 12,401,496 (D.I. 5-2) ("the '496 patent"), 12,580,734 (D.I. 5-3) ("the '734 patent"), and 12,683,762 (D.I. 5-4) ("the '762 patent") (collectively, the "Asserted Patents"). Counts VIII and IX seek correction of inventorship of two De Beers patents. The De Beers/Anglo Defendants seek dismissal of the infringement counts under § 101 and collateral estoppel. They seek transfer of any claims that remain.

## II. SUMMARY OF ARGUMENT

1. The Federal Circuit has already decided the controlling eligibility issue. It affirmed dismissal of every claim of the parent '250 patent because the claims

collected, analyzed, compared, and stored information about physical items with existing imaging, computing, and blockchain tools. The Asserted Patents share the same specification and priority chain. Their claims rearrange the same limitations, move dependent limitations into independent claims, or replace blockchain storage with broader generic memory. Those changes do not materially alter the eligibility question. Collateral estoppel therefore bars Counts I-VII.

2. The same result follows from an independent *Alice* analysis. Every limitation maps to one or more of three dispositive sources: an invalidated '250 claim, the Federal Circuit's reasoning in *Rady*, or the shared specification's admission that the technology was known. The Asserted Patents recite the same abstract workflow. They collect spectral, 3D, or stored signature data; organize it as maps, points, triplets, or other information; compare and classify the information; and store, append, transmit, retrieve, or display the result. The claims supply no improved sensor, scanner, matching algorithm, data structure, network, or storage technique. The shared specification itself identifies a preexisting publication (Kim et al.) that disclosed the same imaging combination. Kim describes a "system [that] measures 3D geometry and hyperspectral radiance simultaneously," with "applications in geology" for the "analysis and identification of materials." *Kim et al., 3D Imaging Spectroscopy for Measuring Hyperspectral Patterns on Solid*

*Objects*, ACM Trans. Graph. 31(4), Art. 38, at 38:1 (July 2012) ("Kim") (Ex. A).[1] As the Federal Circuit recognized, the publication explains how spectral imagers, laser scanning systems, and a xenon light source "can be used to analyze and identify various physical objects," including minerals—just like in the claims of the Asserted Patents. *Rady v. Boston Consulting Group, Inc.*, No. 2022–2218, 2024 WL 1298742, at *3–4 (Fed. Cir. Mar. 27, 2024) (citing J.A. 220–26; '250 patent at 8:32–47).

3. Any remaining claims belong in New York. Rady first chose the Southern District of New York for this controversy. He alleged there that The Boston Consulting Group, Inc. ("BCG") and De Beers UK Limited used his confidential disclosure to develop the Tracr diamond-traceability platform ("Tracr"). After losing on § 101 in New York and at the Federal Circuit, he sued on continuation patents in Texas. He dismissed without prejudice soon after the Texas judge expressed an inclination to transfer to New York, then split his claims between Massachusetts (where BCG is seeking a transfer to New York) and Delaware. BCG's pending New York declaratory judgment action concerns all four Asserted Patents. The original New York case, the BCG action, and this case substantially overlap. Even if the Court treats Delaware as first filed among the 2026 actions, the forum-shopping exception favors New York.

---

[1] All cited exhibits are attached to the Declaration of Joshua D. Calabro, filed herewith.

## III. STATEMENT OF FACTS

### A. The prior New York action and the Federal Circuit decision

Rady sued BCG and De Beers UK Limited in the Southern District of New York in 2020. He alleged that he disclosed his purported invention and unpublished patent application to BCG while working from BCG's New York office, and that they used that information to develop Tracr. *Rady v. Boston Consulting Group, Inc.*, No. 1:20-cv-02285 (S.D.N.Y.), D.I. 30 (Ex. B) ¶¶ 11–14, 33–40, 67. He asserted infringement of U.S. Patent No. 10,469,250 (the '250 patent) (Ex. C), plus trade-secret and contract claims. *Id.* ¶¶ 85–117.

The district court dismissed the patent claim under § 101 at the pleadings stage. Rady later dismissed his remaining claims with prejudice, and the Federal Circuit affirmed. *Rady*, 2024 WL 1298742, at *1, *2 n.**, *5. The Federal Circuit held that "claims directed to gathering and storing data, without more, are impermissibly abstract" and that identifying items through unique physical features is a "long-standing and well-established practice." *Id.* at *3. It rejected the contention that physical equipment changed the result. *Id.* ("The fact that Rady's patent describes the use of specialized hardware does not, standing alone, mean that his claims are not directed to an abstract idea.").

The court identified the claims' "principal shortcoming": they "recite generic steps and results—as opposed to a specific solution to a technological problem." *Id.*

at *3 (quoting *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1355 (Fed. Cir. 2021)). It explained that the shared specification relies on existing devices and uses them as they had been used before. *Id.* at *3–4.

The Federal Circuit also rejected Rady's reliance on alleged utility such as counterfeiting prevention. "[U]tility is not the measure of patent eligibility." *Id.* at *4. The claims use existing imaging and blockchain technology predictably to address the economic problem of counterfeit goods and "rely on existing technological tools to gather and record data but disclose no purported improvement in the tools themselves." *Id.* The court relied on decisions finding claims abstract despite specialized hardware like scanners, biometric sensors, telephones, and servers. *Id.* at *3 (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014)).

**B. The Asserted Patents and the shared specification**

The four Asserted Patents are continuations of the application chain that produced the '250 patent and share its specification. D.I. 5 ¶ 84; Ex. D ¶¶ 8, 12. The shared specification incorporates Kim and states that its spectral imager, laser scanner, and light source may operate as Kim described. '250 patent at 8:32–47; *see Rady*, 2024 WL 1298742, at *3–4 (citing J.A. 220–26).

Counts I-VII accuse Tracr, scanning machines purportedly related to it, and the Valutrax platform of infringing the Asserted Patents. D.I. 5 ¶¶ 176–243. The

Amended Complaint incorrectly calls Valutrax a Tracr clone and alleges that both use scanning machines with spectral imaging and 3D scanning components. *Id.* ¶¶ 176–77. Counts VIII and IX allege that Rady disclosed his invention to BCG, after which De Beers filed patent applications that omitted him as inventor. *Id.* ¶¶ 244–69.

**C. The Texas dismissal, split refiling, and BCG action**

After the Federal Circuit affirmed, Rady asserted the ’261 and ’496 patents against BCG, De Beers and Anglo American entities, and others in *Rady v. Boston Consulting Group, Inc.*, No. 4:25-cv-04031 (S.D. Tex.) (“Texas Action”). Ex. D ¶ 5. Once it became clear that the Texas court was likely to transfer the claims to New York, Rady dismissed the Texas Action. *Id.* ¶ 6. He then filed this action and a separate action against BCG in Massachusetts. *Id.* ¶ 7.

BCG filed a declaratory judgment action in the Southern District of New York concerning all four Asserted Patents. *Boston Consulting Group, Inc. v. Rady*, No. 1:26-cv-08298 (S.D.N.Y.). BCG seeks declarations of invalidity and noninfringement. Ex. D ¶¶ 39–107. Although that action does not include the inventorship claims, those claims arise from the same alleged disclosures and the same work arising from De Beers’ engagement of BCG that formed Rady’s trade secret theory in the original New York action. *Compare id.* ¶¶ 2–4, 12–18, with D.I. 5 ¶¶ 244–69.

# IV. ARGUMENT

## A. Governing standards

### 1. Rule 12(b)(6), § 101, and collateral estoppel

Patent eligibility is a question of law that courts routinely resolve under Rule 12(b)(6). *Content Extraction*, 776 F.3d at 1349. *Alice* asks first whether the claims are directed to an abstract idea and, if so, whether their elements individually or as an ordered combination add an inventive concept. *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208, 217–18 (2014). A complaint cannot contrive eligibility through conclusory allegations or features absent from the claims. *AI Visualize, Inc. v. Nuance Communications, Inc.*, 97 F.4th 1371, 1378–80 (Fed. Cir. 2024) (conclusory allegations or allegations "wholly divorced" from the claims or specification cannot defeat dismissal).

Collateral estoppel applies when the same issue was actually litigated, decided by a final judgment, and essential to that judgment. *Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995). Patent claims need not be identical. Estoppel applies when their differences do not materially alter the invalidity question. *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342–43 (Fed. Cir. 2013).

#### 2. First-to-file and transfer

The first-to-file rule is a flexible comity doctrine that avoids conflicting rulings and promotes judicial efficiency. *Communications Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362–64 (Fed. Cir. 2020) (recognizing equitable exceptions to the rule are "not rare"). A court applying the rule may stay, transfer, or dismiss a substantially overlapping action. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 210 (3d Cir. 2016) (en banc). Exact identity of parties and claims is unnecessary. *Lenovo (United States) Inc. v. Universal Connectivity Technologies Inc.*, No. 24–1126-RGA, 2025 U.S. Dist. LEXIS 188324, at *3–5 (D. Del. Sept. 24, 2025). And the rule is not rigidly chronological. Courts may depart from filing order to prevent gamesmanship and forum shopping and to protect judicial economy. *Candid Care Co. v. SmileDirectClub, LLC*, No. 20–1764-CFC, 2021 U.S. Dist. LEXIS 142393, at *5–8 (D. Del. July 30, 2021) (refusing to reward "litigation gamesmanship"); *EEOC v. University of Pennsylvania*, 850 F.2d 969, 972, 976–78 (3d Cir. 1988) (forum shopping may justify departure from filing order).

### B. Collateral estoppel bars Counts I-VII, and every claim is independently ineligible

#### 1. The prior judgment decided the same eligibility issue

Rady fully litigated eligibility and had a full and fair opportunity to do so. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S.

313, 329, 350 (1971). The resulting judgment is final, and eligibility was essential to it. The continuation claims do not materially alter the issue. *Ohio Willow Wood*, 735 F.3d at 1342–43.

**2. The continuation limitations do not materially alter the issue and fail both *Alice* steps**

**a. Signature generation and claims defined only by stored information**

The core signature workflow appears in ’261 claims 1–2, ’496 claim 1, ’734 claims 1, 12, and 21, and ’762 claims 3, 7, and 8. It maps directly to invalidated ’250 claims 1, 12, and 22. Claims 1 and 12 use spectral and 3D scan data, perform 3D spatial mapping, generate a unique signature, compare it, and record the result. Claim 22 likewise obtains spectral and 3D scan data and compares signatures using 3D spatial analysis techniques and virtual rotation, but determines the signature using “analysis data.” Moving that workflow from a network node into an apparatus, system, method, or memory does not change its focus. *See Alice*, 573 U.S. at 226–27 (eligibility cannot depend on the “draftsman’s art”).

At step one, those claims are directed to collecting and organizing information about physical features. *Rady* already held that abstract. *Rady*, 2024 WL 1298742, at *3–4. For example, ’261 claim 1, ’734 claim 22, and ’762 claim 7 principally claim hardware or memory storing signatures. Their asserted advance lies in the content of stored information, not an improved machine. These limitations define informational content, not an improvement in how the computer stores or accesses

information. *See Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350–51 (Fed. Cir. 2014) (organizing existing information through mathematical correlations into a new data set is abstract).

At step two, the claims identify no new measurement technique, sensor operation, signature-generation algorithm, or memory architecture. The shared specification admits reliance on Kim's existing imaging system. '250 patent at 8:32–47. Broader generic memory cannot add what the more specific blockchain limitation in the '250 patent failed to supply.

**b. Hardware, acquisition, and pre-solution activity**

The hardware and acquisition limitations appear in '261 claims 1 and 11–14; '496 claims 1–2 and 6–7; '734 claims 1–2, 12, and 21; and '762 claims 3, 7–8, and 13. They map to invalidated '250 claims 1–3, 12–14, and 22, which recite the same spectral imager, range scanner, light, camera, scale, cabinet, movement mechanism, and processors. The power source limitation is likewise conventional on the face of the shared specification: "Power source 204—a power source is required." '250 patent at 8:15–18. *Rady* found that the shared specification "relies upon existing devices, such as a '[s]pectral imager,' '[l]aser projector,' 'laser receiver,' and '[x]enon light source.'" *Rady*, 2024 WL 1298742, at *3.

Kim and the shared specification foreclose any theory that these known components supply an inventive concept. Kim simultaneously measured 3D

geometry and hyperspectral radiance with the claimed camera, scanner, light, calibration, and movement components. Kim at 38:1, 38:6–7; ’250 patent at 8:32–47. ’734 claim 12 adds a housing and illumination, but invalidated ’250 claims 2–3 already recited “a light source to provide broad spectrum illumination on the physical item” and components “housed in a cabinet to receive the physical item for assessment.” ’762 claim 7 merely places a processor “in electronic communication with” the camera, scanner, and communication system. ’734 claims 1, 12, and 21 do not even recite a 3D scanner. They demand 3D spatial information without claiming how it is obtained. Result-oriented acquisition language is not a technical improvement. *See Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213–16 (Fed. Cir. 2025) (using an already available technology with its basic functions as a tool does not make a claim eligible).

**c. Physical-feature content, points, triplets, and relative distances**

Certain claims describe information using anomalies, flaws, mass, images, location, coordinate points, triplets, maps, and relative distances. *See* ’261 claims 1 and 11–18; ’496 claims 1–2 and 6–8; ’734 claims 2–4, 12–14, 21–22, and 26; ’762 claims 1–3 and 7–8. For example, ’261 claims 15–18 and ’496 claim 8 specify signatures as “points (x, y, z)” and “triplets [(x, y, z), (x′, y′, z′), (x″, y″, z″)]” of points “in said 3D coordinate space.” These limitations map to invalidated ’250 claims 1–2, 8, 11–13, 18–19, and 22. Claim 11 already listed anomalies, defects,

imperfections, and geometric irregularities. Claims 2, 8, 13, 18, and 19 already added mass, images, and location. Claims 1 and 12 required 3D spatial mapping; claim 22 required spectral and 3D scan data and comparison using 3D spatial analysis techniques.

At step one, these limitations specify the content and mathematical organization of the information. ’250 claim 1’s “3D spatial mapping” already presupposes representing geometry in 3D coordinate space. ’496 claim 1 and ’734 claims 4, 12, and 14 merely describe relative distances. Points, triplets, and distances remain mathematical representations of physical features, not improvements to a computer or imaging device. *Rady* itself explained that gathering and analyzing information of specified content, without inventive technology for performing those functions, remains abstract. *Rady*, 2024 WL 1298742, at *3 (citing *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022)); *see also BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287–88 (Fed. Cir. 2018) (improving “the quality of the information added to the database” is not “an improvement in the database’s functionality”).

At step two, the shared specification describes 2D and 3D anomaly mappings as combinations of points and repeatedly uses “triplet[s] of points” for matching. ’250 patent at 13:42–50, 14:4–18. It also describes anomalies “spatially aligned in 3D space but retain[ing] relative distance.” *Id.* at 6:27–33. For virtual rotation, the shared specification says the item is reoriented “through similar techniques as

described in 3D graphical rendering," which, as the Federal Circuit explained, are "techniques similar to those described in a previously published article." '250 patent at 4:38–50; *Rady*, 2024 WL 1298742, at *3–4. The specification incorporates that publication, Pharr's *Physically Based Rendering*, "by reference in its entirety." '250 patent at 4:38–50. Pharr defines "[a] point" as "a zero-dimensional location in 2D or 3D space" and explains that its classes represent points "in the obvious way: using x, y, z (in 3D) coordinates with respect to a coordinate system." It also calls the triangle "one of the most commonly used shapes in computer graphics" and describes a "natural representation" in which "each triangle stored the positions of its three vertices." Ex. E, Matt Pharr, Wenzel Jakob & Greg Humphreys, *Physically Based Rendering: From Theory to Implementation* § 2.3, at 67; § 3.6, at 152 (3d ed. 2017). The specification thus confirms that the claimed 3D points and triplets use known graphical representations, not an inventive data structure. *See Hawk Technology Systems, LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) ("encoding and decoding image data" and "converting formats" are abstract (quoting *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020))).

**d. Comparison, thresholding, virtual rotation, and classification**

Comparison and classification appear in '261 claims 3–8; '496 claims 4–5; '734 claims 1 and 5–11, 15–20, and 23–25; and '762 claims 4–6 and 9–11. They

map directly to invalidated ’250 claims 1, 10, 12, 21, and 22. Those claims compared signatures, rotated features in virtual space, determined a match, and, in claim 10, addressed a “modified physical item defined from a previously recorded physical item.” The shared specification confirms that a modified item may be “a portion of the original.” ’250 patent at 17:11–13. Thus, the continuation claims’ “piece” classification is the modified-item concept already adjudicated.

At step one, comparison, matching, rotation, and classification are abstract data analysis. The representative ’250 claim already compared signatures using 3D spatial analysis and “rotat[ed] in virtual space” the item’s features, and *Rady* held that claim abstract. *Rady*, 2024 WL 1298742, at *1, *3–4. The continuation claims likewise say what result to reach—identical, piece, different, match, no match—without claiming an improved way to reach it. *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) (“the essentially result-focused, functional character of claim language” is a frequent feature of ineligible claims).

At step two, the claims state results without claiming how to achieve them. ’496 claim 4, for example, recites a “predetermined threshold,” but it supplies no value, method, or technical basis for setting that threshold. The shared specification describes both matching “within a threshold of error” and using C_asset to permit an “acceptable threshold,” with tolerance varying according to anomaly stability. ’250 patent at 6:55–60, 13:8–20. An unspecified comparison tolerance is not a new

matching algorithm, let alone a technological improvement. Nor do the claims improve orientation or classification. They simply instruct the processor to compare, rotate, and decide. *Recentive*, 134 F.4th at 1213–16 (claims that do not delineate how technology achieves the asserted improvement remain abstract).

**e. Recording, saving, appending, and storing**

These limitations appear in ’261 claims 1, 3, 6–8, and 11–14; ’496 claims 1, 4, and 6–7; ’734 claims 1–2, 9–12, and 22; and ’762 claims 1, 6–7, and 11. They map to invalidated ’250 claims 1, 10, 12, 21, and 22, which recorded results or modified items to a blockchain. The shared specification likewise states that a new entry for a modified item can be appended as a “child” of the previous entry. ’250 patent at 5:7–11. The continuation claims use generic memory, save a new record, or append information to an existing record.

At step one, recording the result of abstract analysis remains abstract. *Content Extraction*, 776 F.3d at 1347–48 (collecting data, recognizing specified data, and storing the recognized data in memory is abstract). At step two, generic memory performs its ordinary function. The Federal Circuit already held that even blockchain storage did not supply an inventive concept because the shared specification claimed no improved blockchain or unconventional storage. *Rady*, 2024 WL 1298742, at *5. *Rady* itself emphasized that “an improvement to the information stored by a database

is not equivalent to an improvement in the database's functionality." *Id.* (quoting *BSG Tech*, 899 F.3d at 1288). Broader save-and-append instructions fare no better.

**f. Networks, replicated storage, remote receipt, querying, and display**

The network limitations appear in '261 claims 3 and 9–10; '496 claims 1 and 3; '734 claim 23; and '762 claims 1, 3, 7, and 12. They map to invalidated '250 claims 1, 9, 12, 20, 22, and 23, which recited network nodes, peer-to-peer communication, transmission, and distributed nodes. Invalidated '250 claims 9 and 20, for example, required the node to "communicate with one or more witness nodes via short range communications." '250 claim 1 already compared a new signature to "previously recorded unique signatures" on a blockchain "maintained by the peer-to-peer network." '261 claim 3 and '734 claim 23 similarly receive a signature record from a remote network device before comparing it.

'762 claim 1 does not even require a spectral camera, scanner, or imaging step. It recites generic computers on a peer-to-peer network. One stores signatures, a second stores a copy, and a third sends user input, receives information about an item, and displays it. The copy is ordinary replicated storage. The shared specification says full-node storage simply "stores a history of all blocks," and invalidated '250 claim 22 recites a peer-to-peer network implementing a distributed ledger. '250 patent at 12:39–60, claim 22. *Rady* held that this blockchain and

distributed-ledger implementation was conventional. *Rady*, 2024 WL 1298742, at *4–5.

At step one, the Federal Circuit treated as abstract the collection and indication of results "on a generic computer network operating in its normal, expected manner." *Rady*, 2024 WL 1298742, at *3 (quoting *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022)). At step two, *Rady* found no inventive concept in these "generic features" and "routine functions." *Id.* at *5 (citing *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1367 (Fed. Cir. 2023)). The claimed receiving, copying, storing, retrieving, displaying, and transmitting information are all ordinary computer network functions. *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1064–67 (Fed. Cir. 2026) (ordinary computer and network functions do not become inventive absent a specific improved implementation). The claims identify no improved peer-to-peer architecture, protocol, display, or distributed-storage technique.

**3. The ordered combinations and the Amended Complaint do not change the result**

The claims fare no better as ordered combinations. They follow an expected sequence: obtain or retrieve information, organize it, create or access an identifier, compare it, and store, transmit, or display the result. The shared specification does not claim an unconventional arrangement. *Rady* already held that it does not

meaningfully explain how the components are configured or combined, much less combine them inventively. *Rady*, 2024 WL 1298742, at *5.

The Amended Complaint cannot salvage the claims by adding unclaimed features. It alleges synchronized sensors, subsurface penetration, millions of points, every possible triplet, and a one-to-one digital replica. D.I. 5 ¶¶ 27–32, 38–41. The claims do not require many of those details. And labels such as "pioneering," "high fidelity," or "paradigm shift" describe goals, not claimed technical mechanisms. *AI Visualize*, 97 F.4th at 1378–80. The conventionality of the claimed tools follows from the shared specification and the binding prior adjudication. No discovery is needed. Counts I-VII should be dismissed with prejudice.

### C. The Court should transfer all remaining claims to the Southern District of New York

#### 1. The New York proceedings substantially overlap this action

Rady first chose New York for the core controversy. His 2020 action involved Rady, BCG, De Beers UK Limited, the same alleged disclosure, the same patent family, and the alleged development of Tracr. The pending BCG action places the validity and infringement of all four Asserted Patents before the Southern District of New York. Ex. D ¶¶ 39–107. This action asserts the same patents against the same alleged technology. It requires the same claim construction and the same eligibility and invalidity analysis.

The inventorship counts also overlap. In the original New York action, Rady alleged that he disclosed his unpublished application and confidential technical information to BCG and that BCG and De Beers UK Limited misappropriated that information to develop Tracr. Ex. B ¶¶ 33–40, 94–117. Here he alleges that, after the same disclosures, De Beers drafted patent applications claiming his subject matter but named another inventor. D.I. 5 ¶¶ 244–69. Both theories turn on what Rady disclosed, what was allegedly derived from it, and who conceived the relevant subject matter. Substantial overlap does not require identical counts or parties. *Lenovo*, 2025 U.S. Dist. LEXIS 188324, at *3–5.

**2. Rady first chose New York, and the forum-shopping exception warrants transfer**

Rady selected New York for the original patent and misappropriation controversy. The continuation patents share the same specification and alleged invention, and the current inventorship claims arise from the same alleged disclosure. That history strongly favors resolving the follow-on controversy in New York. *See Communications Test Design*, 952 F.3d at 1362–64.

In any event, the Court need not treat the 2020 action as formally first filed to transfer. Even if the Court focuses only on the 2026 complaints, the forum-shopping exception applies. Rady's Texas dismissal and split refiling, described above, sought a new forum for issues already adjudicated against him.

*Candid Care* is instructive. There, the continuation-patent infringement action in Texas was filed first, and the Delaware declaratory judgment action followed about two weeks later. This Court nevertheless eschewed rigid chronology because it had already adjudicated the parent patent and would not reward the patentee's "litigation gamesmanship." *Candid Care*, 2021 U.S. Dist. LEXIS 142393, at *5–8. The Texas court likewise transferred rather than encourage "blatant forum shopping." *SmileDirectClub, LLC v. Candid Care Co.*, No. 6:20-cv-01115-ADA, 2021 U.S. Dist. LEXIS 260993, at *4–5 (W.D. Tex. Aug. 5, 2021). Here, Rady himself chose New York for the parent patent dispute, and BCG's New York action now covers all four continuation patents. Transfer likewise avoids rewarding serial refiling and inconsistent rulings.

**3. The remaining claims could have been brought in New York**

The claims proposed for transfer could independently have been brought in New York when this action was filed. If the Court dismisses Counts I–VII, only the inventorship counts against De Beers UK Limited remain. As a foreign entity, De Beers UK Limited may be sued in any district. 28 U.S.C. § 1391(c)(3); *see Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 714 (1972). The same is true of the other foreign De Beers/Anglo Defendants. De Beers Jewellers (US), Inc. maintains a regular and established place of business in New York, and Rady alleges that it uses the accused scanning machines at its retail locations. D.I. 5 ¶¶

173–74. Rady's own pleadings place the conduct giving rise to these claims in New York: he alleges that BCG and De Beers UK Limited used disclosures he made from BCG's New York office to develop Tracr and promoted it in New York. Ex. B ¶¶ 37–40, 67–68. Counts VIII–IX arise from the same alleged disclosures and alleged derivation. D.I. 5 ¶¶ 244–69. Those allegations provide a basis for specific jurisdiction in New York over those claims.

Anglo American US Holdings Inc. does not materially alter the transfer analysis. The Amended Complaint pleads no specific accused conduct by that entity beyond (correctly) identifying it as Anglo American plc's indirect Delaware subsidiary and (incorrectly and irrelevantly) as its U.S. corporate representative; Rady tellingly did not name it in Texas, as it was not involved in any accused conduct. D.I. 5 ¶ 3 & n.1; Texas Action, D.I. 25. If its presence or the presence of any other defendant creates a venue obstacle, the Court should sever and transfer the claims against the other De Beers/Anglo Defendants under Rule 21 and stay the case as to any remaining defendants.

Additionally, transfer is warranted under 28 U.S.C. § 1404(a). The private interests favor New York, where Rady alleges the underlying disclosures occurred at BCG's office and Tracr was promoted, rather than Delaware. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995); Ex. B ¶¶ 37–40, 67–68. The public interests favor New York because the Southern District previously

adjudicated the parent patent dispute and now has BCG's action involving all four continuation patents. *Rady*, 2024 WL 1298742, at *1; Ex. D ¶¶ 39–107. Resolving the overlapping issues there would reduce duplicative discovery, litigation expense, and the risk of inconsistent rulings. These considerations outweigh Rady's subsequent choice of Delaware and favor transfer for the convenience of the parties and witnesses and in the interest of justice.

## V. CONCLUSION

The Court should dismiss Counts I-VII with prejudice. It should transfer Counts VIII-IX to the Southern District of New York. If it does not dismiss the infringement counts, it should transfer the entire action or sever and transfer the claims against the De Beers/Anglo Defendants.

Dated: November 16, 2026

OF COUNSEL

Joshua D. Calabro
Christopher P. Borello
**VENABLE LLP**
151 W. 42nd Street, 49th Floor
New York, NY 10036
(212) 218-2371
JDCalabro@Venable.com
CBorello@Venable.com

**VENABLE LLP**

*/s/ Daniel A. O'Brien*
Daniel A. O'Brien (No. 4897)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Tel: (302) 298-3535
daobrien@venable.com

*Counsel for Defendants Anglo American US Holdings Inc., De Beers plc, Anglo American plc, De Beers Jewellers (US), Inc., and De Beers UK Limited*

## CERTIFICATION OF COMPLIANCE

Counsel certifies that this opening brief contains 4,998 words, excluding the caption, tables of contents and authorities, signature block, and this certification. The brief uses 14-point Times New Roman and complies with the applicable 5,000-word limit.

*/s/ Daniel A. O'Brien*
Daniel A. O'Brien (No. 4897)

**CERTIFICATE OF SERVICE**

I, Daniel A. O'Brien, hereby certify that on this 16th day of November, 2026, a copy of the foregoing document was electronically filed with the court and served via CM/ECF, on parties with counsel of record identified on the Court's docket.

*/s/ Daniel A. O'Brien*
Daniel A. O'Brien (No. 4897)